The opinion of the Court was delivered by
O’Neall, J.
The .provision under which the assessment made by the Commissioners, and from which there is an appeal, is the 10th Section of the Charter of the Greenville and Columbia Railroad Company. 11 Stat. 327. That section directs the Commissioners in making the assessment “ to take into consideration the loss or damage which may occur to the owner or owners, in consequence of the land or the right of way being taken; and also the benefit or advantage he, she or they may receive from the establishment, or erection of the Railroad and works, and to state particularly the nature and amount of each; and the excess of loss and damage over and above the benefit and advantage shall form the measure of valuation- of said land or right of way.”
Before considering the question which arises out of this part of the section, it will be necessary, to consider and decide a preliminary question arising out of the 4th and 5th grounds of appeal — could the jury assess a higher value than that fixed by the Commissioners ? If this was strictly an appeal I should *192 not hesitate in saying they could not. But this is not strictly an appeal, although so called by the Act. For, on appealing to the Court at the next session after the valuation, “ satisfactory proof must be given that the appellant has been injured by such valuationand thereupon the Court is to order a new valuation to be made by a jury, who shall be charged therewith.
According to the wording of this part of the section, it would seem that the appeal should be made to the Court, and'then if upon a showing by affidavits, or from an examination of the Commissioners’ valuation, it should seem that the appellant was injured, the Judge presiding should order an issue to be made up forthwith, so as to charge a jury with the question of injury and benefit to the owner of the land by the location of the Railroad. This the law 'directs shall be a new valuation, and hence there can be no doubt that the Commissioners’ previous-valuation can be no standard for the jury.
The second ground of appeal makes the only other question, upon which it is deemed important to express an opinion. The Judge below instructed the jury that they might in assessing damages or making a new valuation, allow for fencing along the line of the Railroad through unenclosed lands used for grazing. This instruction was, I think, erroneous: and this I propose showing in as brief a way as possible.
In Partlow vs. The G. & C. R. R. Co., 5 Rich. 428, Judge Frost said in answer to the third ground of appeal, “the expense of fencing along the road, when it passes through fields, is properly an item of damages.” It might be enough to say that this dictum decides nothing against the appellant; on the contrary its implication seems to favor the conclusion, that it is only when the road runs through fields that fencing would be a proper item. But it really has not and ought not to have any controlling effect on the very matter of which it speaks, further than the respect and weight which is rightfully due to an able Judge, our late esteemed associate. For it was *193 a mere obiter, notwithstanding it was in answer to a ground of appeal: the case turned upon and was decided on the ground, that the increased saleable value of this land “ was a part of the benefit and advantage” to the owner from the location of the road, and must be set off against his damages.
In deciding “what loss or damage may occur to the owner,” the jury are not to resort to mere'possibilities. The natural or necessary consequences from the location are to be looked at, as the cutting off the owner from a part of his land, the necessity to remove a fence and replace it so as to secure a field, when the road run's upon and opens one side of it, the draining of a well or spring by the excavation, as well as the actual taking and occupation of his soil. But fencing along the whole line on both sides of it, in cultivated or uncultivated, enclosed or unenclosed lands, is neither a natural nor a necessary consequence of the location of a Railroad. When it is located through a field, cattle guards, where it enters and leaves, are all which are either necessary or usual. Fences on both sides would subject the owner to more inconveniences by far than the Railroad. For then he would have his fences to climb or pull down, whenever he wished to pass from one part of his plantation to the other. Such a system of fencing might operate as a pound to gather his cattle for slaughter, by an engine, and to break up and destroy it, and the trains, to the endangering of life and limb of all passing. But in fact fences are not built along Railroads in this State, in even enclosed lands. Persons passing over the Gr. and C. Railroad, through the very land for which fencing was allowed, in Partlow’s case, will find that not a solitary rail has been laid alongside the road.
It is argued, however, that to prevent the killing of stock, it is necessary that there should be fences. I have already suggested that instead of protection, it might be the means of destruction. If the questions were new as to the liability of Railroads for such injuries, I should be very much inclined to hold that a Company were not liable for such an injury, unless *194 upon clear proof of negligence in running the train. For the charter of a Railroad makes the use of it by a locomotive, just as lawful as the use of a highway by a wagon or coach. Who would suppose that the owner of a wagon or coach was liable for a hog killed by being driven over by the wagoner or coachman, unless negligence was shown? The runner of a locomotive knows very well that he perils his own life, and all who are dependant upon his care, when he runs over a cow or other animal.- It is »o rare that men are reckless enough to incur such peril designedly, that I think the presumption should be in his favor, and not against him. But in Danner vs. The South Carolina Railroad Company, 4 Rich. 334, a different rule was adopted. In that case it was held, that the Company was liable for killing a cow on its track through the land of the plaintiff, unless it could show that such killing was the result of an inevitable accident. This provides ample means of compensation for all such possible injuries, and hence there can be no necessity to allow for fencing to guard against it. Indeed, if the land owner (this appellee) were allowed for fencing to guard against this contingency, and her cattle Should hereafter be killed, she would not be allowed to recover for them, unless Icilled wilfully. This, I am sure, is enough to dispose of the argument which we have been considering.
I agree fully with the annotator on Railway Cases, (1 Railway Cases, 212, note,) that at Common Law the owner of land was not obliged to fence against the cattle of other persons, and that the owner was bound to keep them on his own land. If they went upon the land of another, he (the owner of the cattle) was liable for any damages therefrom resulting, and that, generally, he could not recover for any injuries which unintentionally were inflicted upon them. These principles would not only excuse a Railroad Company from damages for accidentally killing cattle on their track, but might make the owner liable for any damages which the Company might sustain by running over them. For the Company is the owner *195 of tbe track, either in fee or as an easement granted to its exclusive use, and hence, therefore, cattle, generally, could not lawfully be upon it. But in this State, woodland or unenclosed land is regarded very much as common. Every one may hunt over it — cattle may range and pasture on it. This may, therefore, justify the exception carved out by Danner vs. The South Carolina Railroad Company.
The obligation to fence depends altogether upon Statute. In this State, to entitle a party to remuneration for cattle trespassing upon his grounds, he must have a fence five feet high. Beyond this, we have no law on the subject. That Act cannot, however, touch this case, and it may therefore be laid down broadly that the Railroad Companies are under no obligation to fence their tracks.
In other States, such obligation has been imposed by 'law. In Maine the Statute law requires every Railroad Company to erect and maintain sufficient fences on each side of the land taken by them for a Railroad, when it passes through enclosed or improved lands, but there being no such requisition in reference to unenclosed lands, it was held they were under no obligation to fence against them. Perkins vs. The Eastern Railroad Company, and The Boston and Maine Railroad Company, 1 Railway Cases, 144. That case would be enough for this case, for here the claim is entirely for unenclosed land.
It is very true, that many cases can be found in which fences have been allowed: but they are generally when the Charter of Companies or some general Act has made provision devolving upon them such a burden. So, too, when such decisions have been made, it has been held that no compensation could be made to the owner for an animal killed, unless culpable negligence could be shown .in running the road.
In this case we are of opinion that no allowance for fencing can be made, and it would also seem to follow that the possible killing of cattle in any other way than by inevitable accident, ought not to enter into the assessment of damages. Bor in all *196 other cases the Company is liable for such an injury, and the damages as the injury occurs can be recovered.
The motion for a new trial is granted.
Withers, Whitner, G-loyer, and MüNro, JJ., concurred.
Wardlaw, J.
I agree that the jury were not limited by the assessment of the Commissioners. I agree that there was error in instructing the jury, that “it would be proper to make the allowance” for fencing. This seems not to have been an opinion founded upon the peculiar circumstances of the case, but to have been'the application of a general rule, which it was supposed had been established as to cultivated lands, and which it was thought should in analogy be extended to a grazing farm in forest land. I do not think that any general rule on this subject had the sanction of the Court in Partlow's case: and I would find it very difficult to define the circumstances which limit a general rule, so as to allow it for good reasons to embrace cultivated fields, and not for reasons equally good to extend to the immense tracts of pine lands, all grazed upon by cattle, through which Railroads do run or may run in this State. Fencing is, I think, like a bridge over an excavation, or a cattle guard, a matter which by contract a Railroad Company may assume, or which, where no agreement on the subject will be made by the Company, may or may not, according to circumstances, be taken as a measure of certain items of loss or damage in the making of an assessment. By our law, neither the land owner or the Company is bound to fence along the Railroad: the interest which the public may have in the matter has been wholly overlooked. The Company is, therefore, not liable for cattle killed by a train, in all events, as it would be if the killing resulted from its neglect of the duty of fencing imposed upon it, but is liable only for negligence established by presumption or otherwise. The allowance for fencing *197 made in an assessment would be only an allowance for the damage which might come from the land owner’s cattle being killed, in cases where the- killing could not be proved, or where ~there was no negligence on the part of the Company. It might serve to shift the presumption concerning negligence, where the land owner’s cattle had been killed, from the Company against whom it is now raised, to the land owner himself, who would have been paid to keep his cattle from the track: but it would not authorize the wilful or negligent killing of the land owner’s own cattle, and could have no effect as to the cattle of other persons. It would give neither the right nor the means for the Company to compel the land owner to make the fences, if he chose to run the risk and bear the burden of presumption which would result from his neglect.
The ultimate question in an assessment is, what is the loss or damage which has been produced or may be produced by the operations of the Company ? In one case it may appear that certain inconveniences or risks would be wholly or par- . tially obviated by fencing : the expense of fencing would then be the measure of so much loss as it would obviate. In another case the expense of fencing might greatly exceed the whole value of that portion of a tract which lies on one side of the Railroad, and that value, increased by the depreciating effect, if any, which the cutting off of that portion would leave on the remainder, ought to be the extreme measure of the loss. In one case no security against great danger could exist without a fence; in another, cheap cattle guards would preserve the desired enjoyment of the land. In every case the circumstances should be looked.to, and fencing be considered only as a means of estimating the pecuniary extent of the loss.
I concur in the result.

Motion granted.